## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

*MICHAEL HUND,*

                Plaintiff

       -against-

*GOVERNOR ANDREW M. CUOMO in his official capacity as Governor of New York State, and VINCENT G. BRADLEY in his official capacity as Chairman of the State Liquor Authority,*

               Defendants.

-----------------------------------------------------------

Civil Action No.:
20-CV-

**COMPLAINT**

    Plaintiff, Michael Hund, of by and through their attorneys, Parlatore Law Group LLP, as and for their Complaint against CUOMO and SLA, hereby allege as follows:

### NATURE OF ACTION

    1.    This action challenges the executive orders issued by defendant Governor Andrew M. Cuomo (Cuomo) and enforced by him and defendant, Vincent Bradley in his professional capacity as State Liquor Authority Chairman (SLA).

    2.    Defendants have, without authority or justification, violated various rights belonging to Plaintiffs under both the New York State Constitution and the Constitution of the United States of America, causing harm to Plaintiffs, including the taking of their personal and professional property without just compensation.

    3.    For Defendants violations committed under color of State law against Plaintiffs' rights as guaranteed by the First, Fifth and Fourteenth Amendments of the United States Constitution, and for violations of New York State Executive Law § 29-a, New York Constitution Articles III, § 1; IV § 1 and § 3; and VI, Plaintiffs seek declaratory, injunctive, and compensatory

relief, including attorney's fees, and any other and further relief as this Court deems fair and just. Additionally, Article 78 of the New York Civil Practice Law & Rules prohibit agencies of the state from taking actions that are "arbitrary and capricious or an abuse of discretion." N.Y. CPLR § 7803(3).

## JURISDICTION, VENUE, and PARTIES

4.      Plaintiff Michael Hund, of 5665 South Park Avenue #7, Hamburg, NY 14075,  is a renowned Buffalo Music Hall of Fame musician, who operates his business by coordinating and contracting with venues, including those within New York State, to offer, advertise, and perform at live musical events for which tickets are sold to fans of his music.  As a result of the new rules, the Plaintiff, other musicians, and music venues in New York state, have been required to cancel, breach, or fail to enjoy the benefits of contractual relationships with music artists, advertising companies, and patrons. Plaintiff has suffered immediate, imminent and irreparable harm from this unconstitutional order because he is prevented from earning revenue associated with the following previously booked shows, among a multitude of other live performances that have since been cancelled and will continue to be cancelled, should the overstep of government authority remain without limit:

   a.  Showplace Theatre Concert – (multiple shows)
   b.  Chopshop
   c.  Dyngus Day Party Broadway Market
   d.  Mangias Restaurant
   e.  Seneca Niagara Casino
   f.  Wood Cock Brewery
   g.  Mickey Rats
   h.  Old Man River Concert
   i.  Taste of Buffalo
   j.  Derek St. Holmes Concert, Sunset Bay
   k.  Tonawanda Park Concert
   l.  And many other future shows as the order bans these events moving

forward

5.      Defendant Cuomo is the Governor of the State of New York and was acting under color of State law, and in his official capacity, at all times relevant to this action. Defendant Cuomo's principal place of business is located at the State Capitol Building, Albany, New York. He is sued in his official capacity.

6.      Defendant Vincent G. Bradley, the Chairman of the New York State Liquor Authority, an Agency constituted under NY CLS AL Bev Section 10,  and whose purpose is, "to regulate and control the manufacture, sale and distribution within the state of alcoholic beverages for the purpose of fostering and promoting temperance in their consumption and respect for and obedience to law; for the primary purpose of promoting the health, welfare and safety of the people of the state, promoting temperance in the consumption of alcoholic beverages; and, to the extent possible, supporting economic growth, job development, and the state's alcoholic beverage production industries and its tourism and recreation industry..." NY CLS Al Bev § 2

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 2201–02 and 28 U.S.C. §§ 1331 and 1334.

8.      This Court has authority to grant the requested injunctive relief under 28 U.S.C. § 1343(3), the requested declaratory relief pursuant to 28 U.S.C. § 2201 and § 2202, and plaintiff's prayer for costs, including reasonable attorneys' fees under 42 U.S.C. § 1988 and 28 U.S.C. § 1920.

9.      Venue is proper in the Western District of New York because Plaintiff regularly performs at ticketed and advertised music events and concerts all around the Western New York area,

## **FACTUAL ALLEGATIONS**

10.      The not-quite unprecedented public health crisis caused by the spread of COVID-19 to and in the United States has garnered various and differing responses from Governors across

the country and the citizens of their respective states to whom they are sworn, including the unprecedented abusive power being wielded by Defendant Cuomo.

11.     In New York, Defendant Cuomo has propagated fear of widespread infection and death due to COVID-19, despite its incredibly high survival rate, as a pretext to overstep his authority and abuse the powers granted to him by issuing various executive orders, including the one specifically at issue here, pursuant to which the Defendants have imposed and selectively enforced various rules governing New York citizens and businesses, arbitrarily impacting virtually every aspect of social, political, religious and economic life.

12.     In an unprecedented abuse of his emergency powers, Defendant Cuomo issued Executive Order No. 202 *et seq*. under the pretext of the threat of COVID-19 restricting, restraining, prohibiting, and infringing upon various rights belonging to the citizens and businesses of New York State, as guaranteed by the New York State Constitution and the Constitution of the United States. .   During the pandemic, venues, including those that offer music are still following and adhering to guidelines requiring a maximum of seating at tables, mandatory food service with alcohol purchases, early closing times, social distancing and mask policies, etc. to ensure that they align with the government's orders in controlling the spread of Covid-19.   The additional guidelines do not add to this mission, but rather only have a discriminatory effect on musicians, music venues and their livelihoods in the state of New York.   By prohibiting them to advertise, or charge a ticket price, for any music-related event at their establishments, the Defendant Cuomo and the SLA have arbitrarily and, without explanation, prevented the Plaintiff, and other musicians in New York state from earning a living.   The venues and the musicians will continue to adhere to the "no large-gathering" requirements under Defendant's Executive Orders but can do so while making the money to support their families which advertising and charging ticket sales will allow

4

for such revenue.

13.     Relevant here, Defendant Cuomo's Executive Order No. 202 *et seq.* has unlawfully empowered "the State Liquor Authority and State Police … to supplement local enforcement and make sure the rules are followed" and to take "aggressive action because there are simply no more excuses for non-compliance." *See Governor Cuomo Announces Suspension of 16 Additional New York Bars' Liquor Licenses for Egregious Violations of Coronavirus-Related Regulations*, Governor Andrew M. Cuomo, https://www.governor.ny.gov/news/governor-cuomo-announces-suspension-16-additional-new-york-bars-liquor-licenses-egregious (August 17, 2020).

*14.*     In fact, to date, the Defendants have engaged in an aggressive and arbitrary campaign to suspend the licenses of, and issue monetary penalties to, nearly 150 businesses and counting. *See id.*

15.     However, Defendant Cuomo has himself acknowledged that, "five months into this pandemic, New Yorkers have bent the curve—*achieving and maintaining one of the lowest rates of infection in the country*, including ten straight days with less than 1% of tests returning positive"—conceding that his abusive and unconstitutional executive orders, including Executive Order No. 202 *et seq.*, as well as the related rules, regulations, guidance, policies, laws, etc., stemming therefrom, and the enforcement thereof, are without justification, reason, or authority, even if once justified and necessary to protect the public (which Plaintiffs do not concede). Nevertheless, Defendant Cuomo offers only the lame excuse that his arbitrary and overly broad executive orders are constitutional because of supposed outbreaks in other non-identified states. Important here, on March 10, 2020, a direct quote from Defendant Cuomo reads ""As the number of positive cases rises, I am urging all New Yorkers to remember the bottom line: We talk about all this stuff to keep the public informed -- not to incite fear -- and if you are not a member of the

vulnerable population then there is no reason for excess anxiety," Cuomo said."  Again, on March 19th Defendant Cuomo publicly shared the reason for the shutdown in the first place when he said ""Our goal is to slow the spread of the virus to a rate that the health care system can manage, and we're doing that through aggressive testing and strong social distancing protocols," Cuomo said." The goal of the shutdown was always to slow the spread as to not overwhelm the healthcare system. Federal resources, including a Navy Warship, The USNS Comfort, were added to help buffer the New York Healthcare System.  Importantly, cases do not mean hospitalizations, which goes to the purpose of the shutdown.  Of the overwhelming amount of people that contract Covid-19, very few need healthcare.  In fact, hospitals across the state are urging patients that have tested positive for Covid-19 and only experiencing mild symptoms, which is the overwhelmingly majority of people, to stay home.  The CDC itself says if you have symptoms, the best course of action is to stay at home, "If you have a fever, cough or other symptoms, you might have COVID-19.  Most people have mild illness and are able to recover at home.  If you think you may have been exposed to COVID-19, contact your healthcare provider." (https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/steps-when-sick.html).

16.     On or about April 21, 2020 Defendant Cuomo publicly said that the ship was no longer needed, which showed Cuomo's confidence that the stress on the healthcare system was easing and therefore, offering express evidence that the purpose of the shutdown had been satisfied. Additionally, a makeshift hospital was formed to handle patients if needed, at the Javits center. Again, as of April, only 66 patients were seen there, and Cuomo once again overestimated the strain on the healthcare system that never came.  The following graph depicts the greatly *decreased* number of deaths in New York State, vs. the increase in "cases" statewide.

By The New York Times   Updated August 27, 2020, 12:13 P.M. E.T.



The entire point of the shutdown, which has had a devastating result on Plaintiff's livelihood is now moot, calling into question the constitutional authority of Defendant Cuomo to continue to issue arbitrary and overly broad shutdown orders that have nothing to do with safety.  As of recently, on or about August 25th, 2020 Defendant Cuomo issued a "Caution Flag" to Western, NY as new *cases* have emerged, but yet continuously fails to acknowledge that an uptick in cases does not result in overwhelming the healthcare system, as the overwhelming amount of people diagnosed with Covid-19 show "little to no symptoms".  Alarmingly, Defendant Cuomo has also publicly and slyly announced "upticks" in "cases" in certain, selected areas of New York State. These announcements conveniently tend to align with any area that is publicly threatening legal action or doubting his constitutional authority to continue to shut down businesses and sacrifice people's right to earn a living, and put food on the table for their children.  Cuomo also fails to acknowledge that "cases" does not necessarily correlate to increased deaths or hospitalizations. This is because of an important neglected fact:  nationwide testing is now more available with over 74,830,464 tests being issued nationwide. (CDC.gov August 25, 2020).   At the time of the Executive Order at issue, there were far less "cases" (People tested positive for Covid-19).  Under the pretext of "cases" Cuomo attempts to justify continued shutdowns due to spikes or upticks in "cases" while at the same time ignoring the factual reality that our healthcare system maintains its

stability.  In fact, we are far past the peak of the epidemic in New York State, which is clearly shown by the graphs above.

17.     More egregiously, under the pretext of "public health" and "safety", the Defendants have, both collectively and separately, selectively enforced Defendant Cuomo's executive orders, including Executive Order No. 202 *et seq.*, granting numerous exceptions to similarly-situated citizens and businesses—including thousands of people gathering for (un)organized mass demonstrations if in support of a single and particular message, for which Defendant Cuomo has explicitly expressed his approval; political and personal favors to celebrities, friends, and family; arbitrary promulgation of rules impacting and penalizing business licensees; etc.  Alarmingly, those protests were overwhelming communities of Covid-19 vulnerable communities, since, at the time of showing his support for *some* people to enjoy their First Amendment freedoms, he had data readily available showing an adverse health impact on those communities that attended the event in large numbers.  "People are making a statement about equality, about community, to be against racism, against slavery, I think those are good statements," Cuomo said, when asked about his support of the very large gatherings, and additional support of those that tore down statues to protest their cause.   The very words "I think those are good statements" demonstrates the clear arbitrary nature of Defendant's allowance of some forms of expression under the First Amendment, but not others.  As of August 25, 2020, a live performance, large gathering exception for music celebrities that rub elbows with Defendant Cuomo, has been granted for the MTV Video Music Awards in New York City.

18.     Specifically, pursuant to Defendant Cuomo's executive orders, including Executive Order No. 202 *et seq.*, Defendant SLA has promulgated various new rules that unconstitutionally impact New York citizens and businesses, including Plaintiffs. Such rules are outlined, and most

easily accessible, via Defendant SLA's webpage providing relevant questions and answers thereto concerning its unconstitutional rules and regulations. *See Phase 3/4 Guidelines for Licensed On-Premises Establishments*, Liquor Authority, https://sla.ny.gov/phase3-guidelines-for-on-premises-licenses (last visited on August 25, 2020).

19. As provided therein, to answer the question of "Can I have live entertainment or a DJ in my indoor or outdoor dining area?", Defendant SLA responds that:

> A: Restaurants and other on premises food and beverage establishments that have a license through the SLA are only ***allowed to offer on-premise music if their license certificate specifically allows for such activity*** (i.e., live music, DJ, recorded, etc.). A manufacturer that has an on-premises license also must assure that it is on premises license certificate specifically allows for the type of music it is offering. A manufacturer without a separate on premises license may offer music unless its license certificate specifically prohibits such music.
>
> If offering music, indoors or out, all relevant aspects of the respective Department of Health guidance dining must be followed, e.g., patrons should not be standing except for necessary reasons (e.g., restroom, entering/exiting), standing patrons should wear face coverings, etc. Performers should be at least 12 feet from patrons.
>
> All other forms of live entertainment, such as exotic dancing, comedy shows, karaoke etc., are not permissible currently regardless of phase.
>
> *Additionally, please note that **only incidental music is permissible** at this time. This means that advertised and/or ticketed shows are not permissible. **Music should be incidental to the dining experience and not the draw itself.***

20. In addition, as provided therein, to answer the question, "I am a bar/restaurant owner that has a method of operation that allows for live entertainment, e.g., exotic dancing, comedy shows, karaoke etc., can I provide live entertainment currently?", Defendant SLA responds that:

> A: No, generally incidental music is the only form of live entertainment which is permissible in a bar/restaurant setting currently (in any phase of New York Forward) - so long as see above FAQ on live music. For further information on specific circumstances,

please check with Empire State Development, and the following tool: https://www.businessexpress.ny.gov/app/nyforward.

21.     The paragraphs above, specifically outlining that businesses are "...allowed to offer on-premises music if their license certificate specifically allows for such activity..." and "...only incidental music is permissible...," and "...advertised and/or ticketed shows are not permissible." are incongruous and the subject of this Complaint.

22.     This action specifically concerns the harm caused and continuing to be caused to all New York citizens and business, including Plaintiff, by the Defendants' unconstitutional prohibition of "advertised and/or ticketed shows" and requirement "that only incidental music is permissible", for which the only justification provided by the Defendants is their belief that "music should be incidental to the dining experience and not the draw itself"—notably, and critically, not because of some threat to public health or to prevent the spread of COVID-19. Whatever unknown goal the government is attempting to accomplish, there surely must exist far less intrusive means by which the SLA could accomplish it, and the burden is on the government to demonstrate the need for that goal, whether under strict scrutiny (for the content-based restriction on speech) or the "real or substantial relation" test (for the ban on ticketing).

23.     Because of these arbitrary and capricious rules, Plaintiffs has been prohibited, and is continuing to be prohibited, from engaging in his respective lawful businesses, while similarly-situated business are not so prohibited, and have thus been caused great harm  to the Defendants' violations of Plaintiffs constitutional rights, including violating Plaintiffs' freedom of speech, assembly, and expressive association, constituting a taking of Plaintiff' property without authority or just compensation, and violating Plaintiff's rights to due process and equal protection of the laws.  (U.S. Const. Amend. XIV, Section 1. U.S. Const. Amend V,, U.S. Const. Amend 1)

24.     Even the above set of rules (see Paragraph 19, above) reflects the arbitrary nature of the Defendants' methodology and the basis for which the Defendants expressly state they will selectively enforce these new rules powered by Defendant Cuomo's executive orders, including Executive Order No. 202 *et seq.*; as well as the fact that the more restrictive measures are unquestionably arbitrary and capricious and not necessary, or even remotely close to being designed to, protect the public against the spread of COVID-19.

25.     Moreover, in consideration of the Defendants stated and very public support for, and permissions granted to, various other citizens and businesses to be exempt from enforcement of the Defendants unconstitutional laws, the Defendants selective enforcement of Executive Order No. 202 *et seq.*, and the  related rules, regulations, policies, laws, etc., stemming therefrom are unconstitutional.

26.     Further, and more to the point here, the Defendants' prohibition of "advertised and/or ticketed shows" is unconstitutional under the First, Fifth, and Fourteenth Amendments to the United States Constitution, and does not serve the public health in any conceivable way. Advertising, much like anything in the year 2020 is achieved through digital marketing, Facebook ads, Instagram posts and other social media platforms that in no way add to the spread of Covid-19.

27.     Additionally, the Defendants' requirement that businesses may only play, and patrons are only entitled to hear, "incidental music" is unconstitutional and does not serve the public health in any conceivable way.  These arbitrary orders even egregiously attempt to govern the *intent* of why patrons populate an establishment.  In other words, if music is not the main purposes of the venue, then music is allowed.  On the other hand, if a music venue tries to attract a highly paid musician like Hall of Fame Guitarist Michael Hund (Plaintiff), l, that is not permitted

under the order.   Public safety is not increased, nor decreased by governing the intent of why a patron goes to a venue.   This arbitrary order, combined with the SLA guidance quoted above, attempts at governing the reason people attend events.  If the main purpose of attending the venue is eating a hamburger that is permissible.   If the main reason a person attends is because of live music (and not just incidental music), then that is prohibited.   Once a customer is inside the establishment it makes no impact on safety as to why they are there.   Alarmingly, the SLA continues to actually add to the spread of Covid-19 by requiring bars that did not serve food prior to the shutdown, to now serve food.  It does not take an infectious disease expert to tell you that if you are trying to control the spread of a virus, the golden rule might be "the less people that come in contact with you the better."  By adding the requirement for bars to also serve food, it literally achieves the opposite result of public safety.   Rather, it only increases the chances a patron will become infected as since they are required to eat food, it follows that a person has to make that food and deliver that food to the table.   These rules do nothing for public safety, rather they often have the illogical adverse impact on public safety.   Unlike digital advertising and charging for tickets, requiring food to be sold increases the likelihood that Covid-19 will be spread at that venue. Critically here, and as conceded by the Defendants, even if Defendant Cuomo's executive orders, including Executive Order No. 202 *et seq.*, and the related rules, regulations, policies, laws, etc., stemming therefrom, were once constitutionally sound (which Plaintiff does not concede); at this late date, and with admittedly no emergent public health threat here in New York State, they would no longer be constitutional under the strict scrutiny required to analyze such a government overstep.   Even if the emergency and unknown aspects of the pandemic early on lowered  the required scrutiny level, the data now shows the peaks of the pandemic are now under control and therefore, the Governor no longer would enjoy intermediate or rational basis review.. The

Defendants cannot be allowed to continue their tyrannical abuse of power unchecked with the

information, data, and clear analytics that demonstrate that the healthcare system is in no

jeopardy of being overwhelmed.  Additionally, with the federal government mobilizing the

private market for ventilators, PPE, and respirators in the early days of the pandemic, even if

there was a strain on the once depleted healthcare system in New York state, it would no longer

amount to a situation that the New York healthcare system cannot handle.  On or about April 15

Defendant Cuomo even was quoted as saying:


"*On the ventilators, we've stabilized our health care situation*," he said during his daily

briefing on the novel coronavirus (COVID-19).


"*New York had one of the earlier curves. There are other places in this country that are

now seeing increases in the death rate -- and they're seeing stress on their healthcare system,*"

Cuomo continued.


"*The state of Michigan is going through an issue right now. The state of Maryland is

going through as issue. We're stabilized. We're going to send 100 ventilators to Michigan and 50

to the state of Maryland*."


In saying this, Cuomo not only acknowledged the New York healthcare system would not

be overwhelmed, he sent what were dedicated healthcare resources for New Yorkers to other

states further acknowledging New York healthcare system had been stabilized, if it was ever at a

place of risk to begin with, which Plaintiff does not concede.


28.     Plaintiff prays for immediate relief from the unfair and unconstitutional executive

orders, including Executive Order No. 202 *et seq.*, and the related rules, regulations, policies, laws,

etc., stemming therefrom, pursuant to this Court's powers to grant them a preliminary restraining

order, followed by a permanent injunction, and a declaration that challenged executive orders are unconstitutional, and therefore void, both as written and as applied.

## AS AND FOR A FIRST CAUSE OF ACTION

29.     Plaintiff repeats, reiterates and realleges each and every response applicable to each and every allegation contained in paragraphs "1" through "28" of the Complaint as if fully set forth herein.

30.     Defendant's actions prohibiting both live ticketed music events and the advertising thereof are a clear violation of Plaintiff's First Amendment Rights under the Constitution of the United States, which specifically prohibits, "abridging the freedom of speech, … or the right of the people peaceably to assemble...".  This is impermissible and unconstitutional content-based restriction and advertising is a form of expression.

31.     Defendants have made no indication that the restrictions placed on both live music and the advertising thereof are in the service of the public health, and in fact, have offered no sound reasoning for said restrictions.  In issuing additional "guidance" the SLA is quoted as saying the regulations are "data-based" but yet offer no transparency into the process, nor have they engaged in meaningful data-based discussions with venues or musicians on safety.  They are arbitrarily deciding these rules, deliberately and conveniently leaving out the reasons as to why and claim that it's "data based", while offering no data other than "increased cases", which are easily explained by increased testing capacities made available in New York State and across the country.

32.     Unless Defendant is immediately enjoined from enforcing these arbitrary provisions of their Phase 3 / 4 Guidelines for Licensed On-Premises Establishments, the Plaintiff, and those similarly situated, will suffer irreparable financial harm.

33.     Plaintiff has no adequate remedy at law.

## AS AND FOR A SECOND CAUSE OF ACTION

34.     Plaintiff repeats, reiterates and realleges each and every response applicable to each and every allegation contained in paragraphs "1" through "33" of the Complaint as if fully set forth herein.

35.     Defendants have permitted, pursuant to their regulations, the ability of businesses to provide both indoor and outdoor food and beverage service, as long as specific guidelines are maintained, including operating at 50% capacity with proper spacing and the use of face coverings. (see https://sla.ny.gov/phase3-guidelines-for-on-premises-licenses)

36.     Defendants actions are a clear violation of the 14th Amendment to the Constitution, which prohibits "...any State of depriving any person of life, liberty, or property, without due process...".

37.     Since many businesses are permitted to provide food and beverage service yet they are not permitted to offer both live music nor the advertising of same, and therefore, Plaintiff is being prohibited from earning a livelihood, Defendant actions are depriving them of their property under the 14th Amendment to the Constitution.

38.     Unless Defendant is immediately enjoined from enforcing these arbitrary provisions of their Phase 3 / 4 Guidelines for Licensed On-Premises Establishments, the Plaintiff, and those similarly situated, will suffer irreparable financial harm.

39.     Plaintiff has no adequate remedy at law.

## AS AND FOR A THIRD CAUSE OF ACTION

40.     Plaintiff repeats, reiterates and realleges each and every response applicable to each and every allegation contained in paragraphs "1" through "39" of the Complaint as if fully set forth herein.

15

41.     Defendants have prevented the Plaintiff, and those similarly situated, from the ability to earn a living during what is the busiest time of year for those in the music industry, to wit, the Summer/Fall Concert Season.

42.     Based upon Defendants arbitrary rules, Plaintiff has lost a combined dollar amount of approximately $100,000 to date and all future revenue associated with the ban on live-ticketed events and advertised music. Plaintiff has also lost the ability to work with the venues that sell tickets, since those sales are banned, greatly damaging his ability to earn a livelihood, and further unconstitutionally depriving him of his property.

43.     Based upon Defendants arbitrary rules, Plaintiffs will continue to lose an as yet incalculable amount of money due to the cancellations of events that had been previously booked.

44.     The actions Defendants have taken amounts to a "taking" as defined by the Takings Clause of the Fifth Amendment of the Constitution, which states, "Nor shall private property be taken for public use, without just compensation." Compensation must be fair market value of the property taken.  Preventing musician from earning revenue that he otherwise would have earned had their not been a shutdown demonstrates that the fair market value is easily calculated, based on the loss of revenue he experienced as a result of the shutdown, as well as the future losses he will incur should this injunction be denied.

45.     Unless Defendant is immediately enjoined from enforcing these arbitrary provisions of their Phase 3 / 4 Guidelines for Licensed On-Premises Establishments, the Plaintiff, and those similarly situated, will suffer irreparable financial harm.

46.     In addition, Plaintiffs demand compensation in the amount of $100,000.

**WHEREFORE**, Plaintiff demands judgment that the Court issue a preliminary injunction, pending determination of this action, and then grant a permanent injunction thereafter, enjoining Defendant from enforcement of their arbitrary policies as they relate to live music and the advertising thereof. Plaintiff further demands judgment in the amount of $100,000 (one hundred thousand dollars) to compensate Plaintiff for the harm incurred to their financial stability, together with such other and further relief as the Court deems just and proper as well as the costs and disbursements of this action.

Dated: New York, New York,
　　　August _30_, 2020

**PARLATORE LAW GROUP, LLP**

*Peter J. Speroni*

Peter J. Speroni, Esq.
*Attorneys for Plaintiffs*
*Michael Hund*
One World Trade Center, Suite 8500
New York, NY 10007
P: 212.603.9918
E: peter.speroni@parlatorelawgroup.com